## MARKOE v. TIFFANY & CO.

(Supreme Court, Appellate Division, First Department. February 11, 1898.)

1. LIABILITY OF BAILEE FOR SAFE-KEEPING—DAMAGES.

A trunk containing articles of value was left with a bailee for storage by a married woman, who took a receipt containing the clause, "This receipt must be returned on delivery of goods." The trunk was afterwards delivered to the husband without the knowledge of the wife, and without requiring the delivery of the receipt. *Held*, that the bailee was liable to the wife for the value of the articles in the trunk which belonged to her individually at the time of their delivery.

2. CONVERSION BY BAILEE.

Where a trunk is left with a bailee for safe-keeping, delivery by him of the trunk to another is a conversion entitling the owner to the value of the property from such date.

3. SAME—EVIDENCE OF VALUE.

Where a bailee for hire converts a trunk of valuables committed to his care, in an action to recover therefor an instruction that plaintiff could only recover the lowest estimate of the value of the articles as testified to was error where the difficulty of proving the value was caused by the act of defendant in delivering the articles to a person other than the bailor.

Appeal from trial term.

Action by Annette B. Markoe against Tiffany & Co. Judgment for plaintiff, and defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles E. Miller, for appellant.
Flamen B. Candler, for respondent.

INGRAHAM, J. The plaintiff deposited with the defendant for safe-keeping a trunk which contained silverware and other articles of value, for the storage and insurance of which the plaintiff was to pay a premium or charge, the amount of which was fixed at $36 per year. The defendant issued to her a receipt acknowledging the receipt of the trunk, contents unknown, left with it for safe-keeping, and to be redelivered on surrender of the receipt. By that receipt the defendant also agreed to insure the plaintiff, her executors, administrators, or assigns, to the amount of $3,000 against loss of or damage to the said package and contents by fire or burglary, and this receipt contained the following provision: "This receipt must be returned on delivery of the goods, and all liability under this receipt shall cease on the delivery of such package and contents to the holder hereof." The receipt was delivered to the plaintiff when the trunk was received by the defendant's agent, inclosed in a letter which was signed,

"Tiffany & Co. McKinley," and which stated that the charge for the caring of the trunk would be $36 a year. The receipt was retained by the plaintiff from the date of its delivery, on April 17, 1889. It appeared that the plaintiff, then the wife of William B. Wetmore, subsequently obtained a divorce from him. The plaintiff testified to the contents of this trunk, describing each of the articles therein contained. A portion of the articles were purchased by the plaintiff herself, and a portion of them were wedding presents. As to those articles which the plaintiff purchased herself, she described them, and stated the cost; and as to those articles which were presented to her she particularly described them, and their value was testified to by an expert. There is no evidence tending to contradict the plaintiff's witness as to the value of the goods, or to contradict the description of the goods given by the plaintiff. The plaintiff further testified that in the first week of May, 1889, two or three weeks after they were delivered to the defendant, she presented the receipt, and asked for her trunk, which had been delivered to defendant; that she then saw Mr. McKinley, the same agent that had written the letter, and signed and transmitted the receipt to her; that in answer to that demand McKinley came to her, and said: "I don't understand this at all. That trunk was delivered on the 27th of April." The witness asked to whom it was delivered, and McKinley said that he regretted that he could not give it to her, and it never has been delivered to her. No other explanation appears to have been offered. The defendant simply refused to deliver it. On behalf of the defendant there was evidence given tending to show that McKinley delivered this trunk, 10 days after its receipt, to the plaintiff's then husband, without requiring the delivery of the receipt, or making any inquiry about it, except that it was delivered to the person who was supposed to be the then husband of the plaintiff. The trial judge charged the jury that, if they found as a matter of fact that the trunk and contents belonged to Mr. Wetmore, the person to whom they were delivered, the delivery thereof to him constituted a perfect defense; that the delivery of property to the real owner always constitutes a defense against the bailor; that many of the articles contained in the trunk "are conceded to have been wedding presents from friends. If the presents were made to the plaintiff, they became her individual property; if, on the other hand, they were made to Mr. and Mrs. Wetmore, jointly, they became the property of both, and in such case a delivery to either by Tiffany & Co. would be a delivery to both, and constitute a perfect defense as to such articles." The jury were directed, therefore, to examine the list of articles which had been testified to by the plaintiff, and determine which of the articles she had purchased herself and which had been given to her individually as wedding presents, and to ascertain the value of those articles, and to allow the plaintiff only for such articles as they should determine under this instruction belonged to her. This certainly was as favorable to the defendant as was justified by the facts. Clearly, all of the articles that belonged absolutely to the plaintiff, either because they were purchased by her or because they had been given to her as wedding presents, or under other circumstances, were her separate property, for which she would be entitled to recover. Whether

or not presents given to the husband and wife jointly, which had been left in the possession of the wife, and by her delivered to a bailee for safe-keeping, could be delivered by said bailee to any other person without the consent of the bailor, is a question which it is not necessary for us to determine, as the jury were specifically instructed that they were to allow for those articles only which it was proved belonged to the plaintiff, as either having been purchased by her, or presented to her individually. The court expressly charged at the request of the defendant that the plaintiff could not recover the value of any articles given as wedding presents to herself and her husband jointly. The plaintiff, being in possession of this property, and entitled to such possession as a joint owner, would be entitled to maintain that possession; and, the property having been delivered to the defendant for safe-keeping, any act of the defendant in delivering the property to another, by which her possession of the property is taken away, would entitle the bailor to maintain an action for conversion of the property. In such a case, possession, coupled with a joint ownership in it, is sufficient to sustain an action of trover. The rule is stated in 4 Am. & Eng. Enc. Law, p. 117, as follows: "A person having a special property of goods in his rightful possession can maintain trover against all persons who may wrongfully take the goods from him, even by the command of the general owner;" but, as the jury have found that the property was the individual property of the plaintiff, and as we think that the verdict was sustained by the evidence, it is not necessary to determine that question.

We think also that it was not error for the court to charge that the act of the defendant in delivering this property was a conversion by the defendant, and that the plaintiff was entitled to recover the value of the property as of the dates of the conversion, May 1, 1889. The answer of the defendant admits the deposit of the goods by the plaintiff with the defendant, to be redelivered to the plaintiff on surrender of the receipt given therefor, and that thereafter, and before the commencement of the action, the plaintiff, at the warehouse of the defendant, duly demanded of the defendant the redelivery to her of the said trunk and its contents, and thereupon produced and offered to surrender the said original receipt, which was then in her possession, and offered to pay to the defendant its premium or charges for the storage and keep of the said trunk and its contents, and that defendant neglected and refused to deliver the said trunk, or any of its contents, to the said plaintiff; and the plaintiff's testimony fixed the date of that demand, which was not disputed, as the first week in May, 1889. Assuming that the action was on contract, and not for a conversion, the court charged that, if the jury found for the plaintiff, they might assess the damages, and that the court would add interest thereto from the time of the conversion as agreed to by counsel. There was no exception to this charge, nor was there any request by the defendant to submit the question of interest to the jury; the only request being that the interest should run only from the time of the commencement of the action in case there was no demand upon the defendant for the property; but the answer admits the demand long before the com-

49 N.Y.S.—48

mencement of the action, and that date was fixed by the plaintiff as of the first week in May. The mere statement by the court to the jury that there was a conversion of the property as of a certain date was not error. No recovery was allowed as based upon a tort rather than on contract. The court correctly instructed the jury as to the measure of damages, assuming that the action was for a breach of contract; and merely characterizing the act of the defendant as a conversion of the property as of a particular date did not change the liability of the defendant or impose upon it any additional burden. Whether the action was upon contract or in tort, the measure of damages was the same,—that is, for the value of the property upon the date of the demand and refusal to deliver it to the plaintiff; and, as no exception was taken that would raise the question as to the right of the plaintiff to recover interest, except upon the ground that no demand was made, which demand was admitted by the answer, no error appears upon the record that would justify a reversal or reduction of the verdict upon that ground. Nor do we think that the court erred in refusing to charge that the plaintiff could only recover the lowest estimate, or the value of the articles as testified to by the expert witness called for the plaintiff. The difficulty in the way of the plaintiff's proving the value of these articles was great, but that difficulty was caused by the act of the defendant in delivering the articles to a person other than the bailor, and in violation of the express terms of the contract between the plaintiff and defendant, which provided that the goods were to be delivered only upon the production of the receipt. The difficulty of proving the value thus being caused by the wrong act of the defendant, it was not to be relieved from liability because of such difficulty. What the plaintiff was entitled to recover was the fair market value of her property, and that fair value was for the jury to determine from all of the evidence. The claim of the defendant that several of the articles belonged to the husband and wife jointly was based upon the use by Mrs. Wetmore of the word "us" in describing the circumstances under which they were given. I think that there is a presumption that the contents of this trunk belonged to the plaintiff. They were in her possession; delivered by her to the defendant. The defendant, the bailee, justifies the delivery of the goods to a third person upon the ground that these articles were owned by such third person. The burden of proof was upon the defendant to show that fact; and, at least, it was a question for the jury to say whether the ownership of these articles was proved by the testimony not to have belonged to the plaintiff. In view of the charge of the court that the jury were not justified in allowing the plaintiff for the value of the articles that belonged either to the husband personally or to the husband and wife jointly, the jury must have found that all of the property for which they made an award, which was included in the verdict of $2,000, was the property of the plaintiff, and that the defendant had failed to sustain that burden by the testimony before them. It seems to me, however, that the verdict was larger than was justified. The court charged that the plaintiff could not recover more than

the value claimed in the bill of particulars. The value claimed in the bill of particulars was $2,905. In that was included a gold service valued at $1,500. Deducting the $1,500 allowed for it in the bill of particulars, leaves the value of the property as stated in the bill of particulars, excluding the gold service, at $1,405, and adding to that sum the value of the gold service as fixed by the testimony at $285, made the total amount that the plaintiff was entitled to recover $1,694, instead of $2,000, the verdict found by the jury.

We think, therefore, that the judgment should be reversed, and a new trial ordered, unless the plaintiff stipulates to reduce the judgment to the sum of $1,694, and interest thereon from May 7, 1889. Upon the plaintiff's making this stipulation, the judgment, as modified thereby, is affirmed, without costs of this appeal. All concur.